UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

YEURY J.S.,[1]

    *Petitioner,*

v.

THOMAS DECKER, et al.,

    *Respondents.*

Civil Action No. 20-5071(MEF)

**OPINION**

During the early days of the COVID-19 pandemic, the Court entered a preliminary injunction releasing from custody the Petitioner, a civil detainee.

The Respondents now move to vacate the injunction.

Before deciding the motion, the Court sets out its views on a preliminary matter.

### I. PROCEDURAL HISTORY

On April 24, 2020, the Petitioner, an immigration detainee then in custody of Immigration and Customs Enforcement at the Hudson County Correctional Facility ("HCCF"), filed a combined habeas corpus petition and complaint for injunctive and declaratory relief ("Petition").[2]

The Petitioner argued that his conditions of confinement at HCCF were unconstitutional, and sought "injunctive relief ordering

---

[1] The Petitioner is identified by his first name and the first initials of his surnames. This is how he has been identified throughout this litigation.

[2] The parties agree that HCCF no longer houses immigration detainees. See Respondent's Letter at 3-4 (Docket Entry 91); Oral Argument Transcript (June 27, 2023) at 9. Indeed, HCCF has apparently not housed such detainees since 2021. See Respondent's Letter at 3-4.

[the] Defendants to immediately release" him. See Petition at 20 ¶ 3 (Docket Entry 1).

On May 11, 2020, the Court entered a preliminary injunction ("May 2020 Preliminary Injunction") that released the Petitioner. See May 2020 Preliminary Injunction at 1-2 (Docket Entry 21).

The May 2020 Preliminary Injunction was to expire during July of 2020. See id. But on consent of the parties, the Preliminary Injunction was repeatedly extended, almost always on a so-ordered basis. See Multiple Orders (Docket Entries 43, 50, 56, 72, 79, 81, 83, 88). Under the most recent extension, the May 2020 Preliminary Injunction expires on June 30, 2023. See Order at 2 (Docket Entry 88).[3]

On April 24, 2023, the Respondents indicated by letter that the Petitioner had been charged with a series of crimes, which have not yet been adjudicated. See Respondent's Letter at 2-3. The charges include: reckless endangerment (for discharge of an unlicensed firearm in the direction of two people), burglary, sexual assault, aggravated assault, and rape by forcible compulsion. See id. The Petitioner, the Respondents noted, is in criminal custody on these charges --- and when his criminal custody terminates, the Respondents stated, ICE plans to again detain him, presumably for violation of the immigration laws. See id. at 3.[4]

Against this backdrop, the Respondents moved to vacate the Court's May 2020 Preliminary Injunction, see id. at 1, apparently out of

---

[3] The Petitioner suggests that the preliminary injunction extends past June 30, 2023. This is not consistent with the record. The Court finds that the injunction expires on June 30, 2023.

[4] As noted, ICE officials plan to detain the Petitioner when he is released from criminal custody. See Respondents' Letter at 3. Identifying that moment with precision is not now possible. This is because the Petitioner could be released from criminal custody under a variety of different circumstances, each of which would occur at a different time. For example, the Petitioner (who is awaiting trial) has been offered bail, see Oral Argument Transcript (June 27, 2023) at 6, and he could accordingly be released (soon) from criminal custody if he makes the required bail conditions. At the other end of the spectrum, if the Petitioner does not make bail and is convicted of the underlying charges, he would likely not be released from criminal custody for a substantial period of time --- until after he completes any sentence imposed.

concern that the Preliminary Injunction could be read to preclude ICE from detaining the Petitioner in the future.

In response, by letter dated May 19, 2023, the Petitioner argued that the May 2020 Preliminary Injunction could be vacated only following a hearing that establishes that the charged crimes were in fact committed. See Petitioner's Letter at 2-7.

On May 26, 2023, after the above-described briefing was submitted, this case was reassigned to the undersigned. See Text Order (Docket Entry 95).

Oral argument was scheduled on an expedited basis, and this Opinion now follows three days later.

## II. THE PRELIMINARY INJUNCTION

As noted above, the Respondents moved to vacate the Court's May 2020 Preliminary Injunction, see Respondent's Letter at 2-3, apparently because the injunction might be understood to preclude ICE from detaining the Petitioner.

For his part, the Petitioner interprets the May 2020 Preliminary Injunction as having accomplished two things.

First, it ordered the immediate release of the Petitioner from HCCF. See Petitioner's Letter at 2-3.

And second, it ordered the Respondents not to detain the Petitioner in any "congregate" facility (not just HCCF) --- and into the future (including until the as-yet-undetermined point, see footnote 4, when ICE will again seek to detain the Petitioner). See Petitioner's Letter at 3.

But the second part of this interpretation is not accurate.

The May 2020 Preliminary Injunction was based on an April 2020 Petition. That Petition focused on allegedly unlawful conditions of conditions at HCCF.[5] So too did the Declarations submitted in support of the Petition. See Greifinger Declaration ¶¶ 25-39; Durkin Declaration ¶¶ 3-17; Vecchione Declaration ¶¶ 6-16.

---

[5] See, e.g., Petition at ¶¶ 25-31 (describing then-prevailing conditions at HCCF, including: the number of people in each unit, the precise cleaning supplies made available, the size of cells, the cleanliness of showers, the frequency with which toilets are flushed, and the amount of body soap, gloves, and masks provided).

3

In addition, the Petition sought relief based on HCCF conditions of confinement in light of the COVID-19 pandemic as it was during the spring of 2020. See, e.g., Petition at 9 ¶ 24 ("coronavirus is rapidly spreading at the HCCF and there are multiple confirmed cases of COVID-19 amongst ICE detainees, jail inmates, and facility staff"; "ten ICE detainees, twenty-seven inmates, and eighty-nine staff members ha[ve] tested positive for COVID-19 at the HCCF"; four HCCF employees "who worked at the facility died from COVID-19").

Indeed, the Petition made this clear from its first sentence:

> [The Petitioner] is a civil immigration detainee who, by virtue of his serious medical conditions, including a heart defect, faces an imminent risk of severe illness or death if he contracts COVID-19 at the Hudson County Correctional Facility . . . , where he is currently detained, and where the virus has already claimed the lives of four staff members and infected 37 detainees and inmates.

Id. at 2 ¶ 1.

Respondents understood the Petition as focused on conditions of confinement at HCCF during 2020:

> Petitioner contends that his detention at HCCF under present conditions of confinement constitutes unlawful punishment and therefore violates due process.

Opposition at 21 (Docket Entry 12).

And so did the Court:

> Petitioner asserts that his detention under the present dangerous and unsanitary conditions of confinement at HCCF constitute unlawful punishment. He argues that the virulence of the outbreak at HCCF and the inability of the facility to prevent the spread undermines any legitimate governmental interest Respondents having in detaining him.

Opinion at 12 (Docket Entry 20) (cleaned up).

Consistent with this understanding of the relief being sought by the Petitioner, the Court during May of 2020 analyzed then-prevailing conditions of confinement at HCCF, see id. at 6-10, 16-21, and distinguished as inapposite cases that did not involve as "active outbreak," see id. at 14, as was then underway at HCCF.

4

In sum, the Petition did not seek relief as to conditions of confinement at "congregate" facilities in general, in 2020 and also out into the future. Rather, the Petition --- on its face, and as understood --- sought injunctive relief as to conditions of confinement at HCCF as of the spring of 2020.

That is consistent with the May 2020 Preliminary Injunction --- which said nothing about "congregate" facilities in general, and nothing about enjoining the federal government for an (even-now) open-ended number of years into the future. See May 2020 Preliminary Injunction at 1-2.

Bottom line: the May 2020 Preliminary Injunction, which expires on June 30, 2023, see footnote 3, does not, properly interpreted, purport to prevent ICE from detaining the Petitioner at some point in the future in a "congregate" facility.[6]

\*   \*   \*

To afford the parties an opportunity to assess their positions in light of the above, and to submit any necessary supplemental briefing, an appropriate order follows.

/s/ Michael E. Farbiarz
_____
Michael E. Farbiarz, U.S.D.J.

---

[6] Given this understanding, the May 2020 Preliminary Injunction is very likely moot. The relevant cases include: Coronel v. Decker, 2023 WL 199192 (S.D.N.Y. Jan. 17, 2023); Juan E. M. v. Decker, 2022 WL 17340669 (D.N.J. Nov. 30, 2022); De Melo v. Decker, 2021 WL 4460970 (S.D.N.Y. Sept. 28, 2021); and Paul v. Decker, 2021 WL 1947776 (S.D.N.Y. May 14, 2021). Other relevant cases include: Hope v. Doll, 2021 WL 9161517, at *6 (M.D. Pa. Feb. 1, 2021), report and recommendation adopted, 2022 WL 2918897 (July 25, 2022); Mohamed S. v. Ice, 2022 WL 2439574 (D. Minn. Jan. 6, 2022), report and recommendation adopted, 2022 WL 219574 (Jan. 25, 2022); Green v. Acuff, 2021 WL 6061735 (S.D. Ill. Nov. 5, 2021); Costa Soares v. Wolf, 2021 WL 7285994 (C.D. Cal. Sept. 13, 2021). Also relevant: Abreu v. Superintendent Smithfield SCI, 971 F.3d 403, 406 (3d Cir. 2020); Wilson v. Reilly, 163 F. App'x 122, 125 (3d Cir. 2006); and Leybinsky v. U.S. Immigr. & Customs Enf't, 553 F. App'x 108 (2d Cir. 2014).

5